IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SAMUEL ERIN EAGER, | ) | CIV. NO. 15-00098 SOM/KSC |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING COMPLAINT WITH |
| | ) | LEAVE TO AMEND PURSUANT TO 28 |
| vs. | ) | U.S.C. §§ 1915(e)(2) & 1915A |
| | ) | |
| SIX UNKNOWN HONOLULU POLICE | ) | |
| DEPARTMENT OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A

Before the court is *pro se* Plaintiff Samuel Erin Eager's civil rights complaint. Plaintiff is incarcerated at the Halawa Correctional Facility ("HCF"), and is proceeding *in forma pauperis*. Plaintiff alleges that six unidentified Honolulu Police Department ("HPD") officers violated his rights under the Fourth Amendment when they entered his apartment without a valid warrant on or about January 27, 2013. Compl., Doc. No. 1, PageID #5.

Plaintiff's Complaint is DISMISSED with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A, for his failure to state a cognizable claim on which relief may be granted. Plaintiff is granted leave to amend to correct the Complaint's deficiencies on or before **April 30, 2015.**

## I. BACKGROUND[1]

Plaintiff claims that, on or about January 27, 2013, two unidentified HPD officers knocked on his door and asked to speak with him through the window. Compl., Doc. No. 1, PageID #7. Plaintiff says one officer waved a piece of paper at him, which Plaintiff assumed was a fake warrant. Plaintiff became afraid and alleges that he "saw my door being opened with a key." Plaintiff then grabbed a pair of scissors, cut through his window screen, shattered the jalousie slats with his hands, and crawled onto the window ledge, cutting his leg and foot. *Id.*, PageID #8.

Once on the window ledge, Plaintiff saw a fire truck, ambulance, four other police officers aiming weapons at him, and several police cruisers in his apartment parking lot. Plaintiff told those gathered below that he would jump, and he held the scissors to his heart. *Id.* Plaintiff says that he remained on the window ledge for more than an hour, and that several officers entered his apartment during that time. Plaintiff remained on the window ledge "until [he] had sufficient witnesses to the incident before surrendering." *Id.*

After he "surrendered," Plaintiff was taken to the Queen's Medical Center by ambulance, treated for his cuts, and released. Plaintiff walked home, where he discovered that his

---

[1] For clarity, the court refers to the electronic pagination provided in CM/ECF for all documents filed in this action.

driver's license was missing.  *Id.*, PageID #9.  Plaintiff says he was never given or read the "fake" warrant and was not arrested, although he is incarcerated now.

Plaintiff names six unidentified police officers in their official capacities as Defendants to this suit.  He seeks an apology from the HPD and compensatory relief for his mental anguish and loss of enjoyment of life.

## II.  LEGAL STANDARD

The court must screen all civil actions brought by prisoners relating to prison conditions or seeking redress from a governmental entity, officer, or employee.  28 U.S.C. § 1915A(a).  Complaints or claims that are frivolous, malicious, fail to state a claim, or seek relief from a defendant who is immune from such relief must be dismissed.  28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1).

A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Twombly*, 550 U.S. at 555 (stating the court is "not bound to accept as true a legal conclusion couched as a factual allegation."). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In analyzing a pleading under this standard, the court must set conclusory factual allegations aside, accept all non-conclusory factual allegations as true, and determine whether those non-conclusory factual allegations accepted as true state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 676–684; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (noting that the court need not accept legal conclusions, unwarranted deductions of fact, or unreasonable inferences as true). And while "[t]he plausibility standard is not akin to a probability requirement," it does "ask[ ] for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). To make this plausibility determination, the court is

permitted "to draw on its judicial experience and common sense." *Id.* at 679.

Leave to amend should be granted if it appears the plaintiff can correct the defects of his or her complaint. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *but cf.*, *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013) (holding that the district court has discretion to dismiss a pro se complaint without leave to amend when "it is clear that the complaint could not be saved by any amendment").

### III. DISCUSSION

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

**A. Fourth Amendment: Warrantless Search and Seizure**

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are

5

presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586; *Sheehan v. City and Cnty. of S.F.*, 743 F.3d 1211, 1221-22 (9th Cir. 2014). There are two general exceptions to the warrant requirement for home searches: exigency and emergency. *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005). "These exceptions are 'narrow' and their boundaries are 'rigorously guarded' to prevent any expansion that would unduly interfere with the sanctity of the home." *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009) (citation omitted). "[W]arrants are generally required to search a person's home or his person unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (quotation marks omitted).

That is, a "warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant." *Michigan v. Tyler*, 436 U.S. 499, 509 (1978). "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Brigham City*, 547 U.S. at 403; *Georgia v. Randolph*, 547 U.S. 103, 118 (2006) ("[I]t would be silly to suggest that the police would commit a tort by entering . . . to determine whether violence . . . has just occurred or is about to (or soon will) occur.").

Thus, "a warrantless search or seizure is permitted to render emergency aid or address exigent circumstances." *Sheehan*, 743 F.3d at 1221 (citing *United States v. Struckman*, 603 F.3d 731, 737–38 (9th Cir. 2010)).

"The emergency aid exception applies when: '(1) considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the search's scope and manner were reasonable to meet the need.'" *Sheehan*, 743 F.3d at 1221 (quoting *United States v. Snipe*, 515 F.3d 947, 952 (9th Cir. 2008)). To justify a warrantless search under the emergency doctrine: (1) the police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property; (2) the search must not be primarily motivated by intent to arrest and seize evidence; (3) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched. *United States v. Stafford*, 416 F.3d 1068, 1073–1074 (9th Cir. 2005).

Viewing Plaintiff's statement of facts as true and in the light most favorable to him, this court cannot reasonably infer that Plaintiff was subjected to an illegal search or seizure. Even if exigent circumstances are matters that should

7

be raised as a defense and not matters that must be addressed in a complaint, this court cannot disregard what is plain on the face of Plaintiff's pleading. Plaintiff admits that the two officers knocked at his door and asked to speak with him. They did not tell him they had a warrant and they did not enter his apartment. Plaintiff never saw the paper they held but nonetheless assumed it was a fake warrant. Plaintiff says he *then* became fearful and agitated, grabbed a pair of scissors, cut through his window screen, broke the window's glass with his bare hands, put the scissors to his heart, climbed on the sill, and threatened to commit suicide. Plaintiff explicitly states that he remained on the window sill threatening to jump with the scissors to his heart for more than an hour, and that it was during that period that two police officers entered his apartment. After they entered, Plaintiff voluntarily surrendered, was taken to the hospital, treated, and released. Plaintiff was not arrested.

These statements make clear that, when they entered Plaintiff's apartment, the two officers had an objectively reasonable basis to conclude that there was an immediate need to protect Plaintiff or others from serious harm. *Sheehan*, 743 F.3d at 1221. Plaintiff's statements also show that the officers' search and/or seizure was objectively reasonable to meet the exigent need presented and went no further than necessary. *Id.*

Plaintiff describes nothing showing that the officers did more than was required to ensure his (and any bystanders') safety. He does not allege the officers searched his apartment, confiscated his property, or later charged or arrested him based on evidence found during their warrantless entry into the apartment. To the extent Plaintiff alleges his driver's license was illegally "seized," this is simply a conclusory allegation of fact that raises only the mere possibility that someone may have taken Plaintiff's license during or after the incident. Plaintiff fails to state a claim against the unidentified police officers for violation of the Fourth Amendment.

**B. Official Capacity and Unnamed Defendants**

Defendants are six unidentified HPD officers named in their official capacities only. An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Brandon v. Holt*, 469 U.S. 464, 471–72 (1985); *Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 166. Plaintiff's claims against six unnamed HPD officers in their official capacities must be treated as a claim against HPD.

To impose liability pursuant to § 1983 on a municipality or other local government agency, such as the HPD,

however, Plaintiff "must prove that 'action pursuant to official municipal policy' caused [his] injury." *Connick v. Thompson*, --- U.S. ----, ----, 131 S. Ct. 1350, 1359 (2011) (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Local government entities are "not vicariously liable under § 1983 for their employees' actions." *Id.* (citing *Monell*, 436 U.S. at 691); *see also Iqbal*, 556 U.S. at 676 (holding that there is no respondeat superior liability under § 1983). Liability may be imposed only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

Plaintiff fails to identify any HPD policy, regulation, or officially adopted or promulgated decisions, that prompted or required the unnamed HPD officers to enter Plaintiff's home without a warrant allegedly inflicting the injuries about which he complains.

Plaintiff also fails to identify any individual HPD officer allegedly responsible for violating his rights, although he has had more than two years to discover their identities. The use of "John Doe" to identify a defendant is not favored in the federal courts. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). While the U.S. Marshal can be ordered to "issue and

serve all process" on Plaintiff's behalf pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3), it is impossible for the Marshal to do so here when the only parties named as defendants are unidentified. *See Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (in order to properly effect service under Rule 4 in an IFP case, the plaintiff is required to "furnish [the U.S. Marshal with] the information necessary to identify the defendant"). Therefore, unless and until Plaintiff can name an individual defendant or defendants, this lawsuit cannot proceed.

Plaintiff's claim against Six Unknown Honolulu Police Department Officers fails to state a cognizable claim for relief under the Fourth Amendment. The Complaint is DISMISSED with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

### IV. LEAVE TO AMEND

Plaintiff may file an amended complaint on or before **April 30, 2015.** The amended complaint must cure the deficiencies noted above. An amended complaint generally supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Local Rule LR10.3 further requires that an amended complaint be complete in itself without reference to any prior pleading. The court will not refer to the original pleading to make an amended complaint complete. Defendants not named in the caption and claims dismissed without prejudice that are not realleged in an amended complaint may be deemed voluntarily

dismissed.  *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) ("[C]laims dismissed with prejudice [need not] be repled in a[n] amended complaint to preserve them for appeal. . . . [but] claims [that are] voluntarily dismissed [are] . . . waived if not repled.").  In an amended complaint, each claim and the involvement of each Defendant must be sufficiently alleged.

Plaintiff is NOTIFIED that he must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii if he chooses to amend his pleading. Plaintiff is further cautioned that his Amended Complaint must identify the unknown HPD officers he seeks to sue before U.S. Marshal service may be ordered.  *See Aviles v. Vill. of Bedford Park*, 160 F.R.D. 565, 567 (1995) (Doe defendants must be identified and served within 120 days of the commencement of the action against them); Fed. R. Civ. P. 15(c)(1)(C) & 4(m).

### V. 28 U.S.C. § 1915(g)

If Plaintiff fails to file an amended complaint correcting the deficiencies identified in this Order on or before **April 30, 2015**, this dismissal may later count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g).  A prisoner may not bring a civil action or appeal a civil judgment *in forma pauperis* under 28 U.S.C. § 1915

> if the prisoner has, on 3 or more prior
> occasions, while incarcerated or detained in

12

> any facility, brought an action or appeal in
> a court of the United States that was
> dismissed on the grounds that it is
> frivolous, malicious, or fails to state a
> claim upon which relief may be granted,
> unless the prisoner is under imminent danger
> of serious physical injury.

28 U.S.C. § 1915(g).

## VI. CONCLUSION

IT IS HEREBY ORDERED that:

(1) The Complaint is DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), with leave granted to amend. Plaintiff may file an amended complaint curing the deficiencies noted above on or before **April 30, 2015.**

(2) Failure to timely amend the Complaint and cure its pleading deficiencies may result in **DISMISSAL** of this action for failure to state a claim, and may later be counted as a strike pursuant to 28 U.S.C. § 1915(g).

(3) The Clerk is directed to mail Plaintiff a form prisoner civil rights complaint so he can comply with the directions in this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 9, 2015.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

*Eager v. Six Unknown Honolulu Police Officers*, 1:15-00098 SOM/KSC; Scrng 2015/Eager 15-98 som; J:\PSA Draft Ords\SOM\Eager 15-98 som (4th Amd, doe ds, off cap.).wpd