IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SAMUEL ERIN EAGER, | ) CIVIL NO. 15-00098 JMS-KSC |
| | ) |
| Plaintiff, | ) ORDER GRANTING |
| | ) DEFENDANTS' MOTION TO |
| vs. | ) DISMISS SECOND AMENDED |
| | ) COMPLAINT, DOC. NO. 21 |
| HONOLULU POLICE | ) |
| DEPARTMENT, ET AL., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT, DOC. NO. 21

## I. INTRODUCTION

Defendants City and County of Honolulu (the "City"), and two

unknown Honolulu Police Department ("HPD") Officers (collectively,

"Defendants")[1] move to dismiss the Second Amended Complaint ("SAC") in this

42 U.S.C. § 1983 action brought pro se by Plaintiff Samuel Erin Eager ("Plaintiff"

or "Eager") alleging a violation of the Fourth Amendment based on an incident

where two HPD officers entered Plaintiff's residence without a warrant.  Doc. No.

_____

[1] The court considers the claims against HPD to be against the City.  *See, e.g.*, *Dowkin v. Honolulu Police Dept.*, 2010 WL 4961135, at *3 (D. Haw. Nov. 30, 2010) (concluding that because "HPD is not an independent legal entity . . . [t]he court will treat Plaintiffs' claims against the HPD as claims against the City") (citations omitted).

21. This is Plaintiff's third attempt to state a claim upon which relief can be granted. Based on the following, the Motion to Dismiss is GRANTED as to the § 1983 claim. Because further amendment would be futile, the dismissal is with prejudice. To the extent the SAC asserts supplemental state law claims for negligence and/or infliction of emotional distress, the state law claims are dismissed without prejudice under 28 U.S.C. § 1367(c)(3).

## II. **BACKGROUND**

Two prior Orders dismissed the Complaint and First Amended Complaint ("FAC") with leave to amend.[2] *See Eager v. Six Unknown Honolulu Police Dep't Officers*, 2015 WL 1608771 (D. Haw. Apr. 10, 2015) ("*Eager I*") (dismissing Complaint); *Eager v. Honolulu Police Dep't*, 2015 WL 3754083 (D. Haw. June 16, 2015) ("*Eager II*") (dismissing FAC). Following dismissal of the FAC, Plaintiff filed the SAC on July 2, 2015. Doc. No. 11. The court does not repeat the allegations and analysis set forth in those prior Orders -- the focus here is on the specific allegations of the SAC. Nevertheless, some of the prior background is relevant and is discussed where appropriate.

---

[2] The action was previously assigned to Judge Susan Oki Mollway. Prior to service of the Complaint and First Amended Complaint, Judge Mollway entered Orders dismissing the Complaints without prejudice and with leave to amend. *See* Doc. Nos. 5 & 10. After counsel for Defendants entered an appearance, Judge Mollway recused herself, and the action was reassigned to this court on November 30, 2015. *See* Doc. No. 22.

A.    **Factual Background**

The core allegations of the SAC remain essentially the same as in the

Complaint and FAC -- Plaintiff alleges that on January 27, 2013, two HPD officers

entered his apartment without his permission and without a warrant.  Doc. No. 11,

SAC ¶¶ 4-12.  Plaintiff alleges that he was in his residence listening to the radio

when an HPD officer knocked on his door, and another HPD officer was looking

in the window waiving a folded piece of paper.  *Id.* ¶¶ 5-6.  The officers asked him

to come outside.  *Id.* ¶ 7-8.  Plaintiff was "extremely afraid" because the officers

"were big and burly [and] were acting menacing and suspicious," and "refused to

identify the paper they were displaying."  *Id.* ¶ 9.

Plaintiff alleges that he "went and turned his radio off and as he did

so he saw the handle on his dead bolt lock turn and his door was opened by the

officer who had been knocking on it."  *Id.* ¶ 10.  Terrified, he claims he "ran to his

window, and[,] grabbing a pair of scissors, chopped through the screen and glass

slats.  By this time both officers had entered the Plaintiff's apartment completely."

*Id.* ¶ 12.  The SAC alleges that Plaintiff then "swung outside onto the ledge,"

where he saw "a fire truck, an ambulance and several police cruisers as well as

attendant personnel already in place."  *Id*. ¶¶ 12-13.  "Plaintiff put the scissors to

his chest and threatened to jump off of the ledge."  *Id*. ¶ 14.  Plaintiff "waited on

3

his apartment ledge for well over an hour." *Id.* ¶ 15.  During that time, other

officers allegedly aimed weapons at him, entered his apartment, made offensive

remarks, and threatened physical and deadly force. *Id.* ¶¶ 13, 16, 20.  Plaintiff

eventually surrendered, was handcuffed and taken to the hospital, and later

released. *Id.* ¶ 18.

The two prior Orders interpreted the Complaint and FAC as alleging

that the two HPD officers did not enter Plaintiff's residence until "only *after* he

had threatened suicide, broken his window and screen with his hands, and sat on

the window ledge for more than an hour while he waited for sufficient witnesses to

the incident." *Eager II*, 2015 WL 3754083, at *1; *see also Eager I*, 2015 WL

1608771, at *3 (interpreting Complaint as alleging that Plaintiff "remained on the

windowsill threatening to jump with the scissors to his heart for more than an

hour, and it was during that period that two police officers entered his apartment").

On that basis, the Orders dismissed the Complaint and FAC because the

allegations made clear that a warrantless entry was constitutional under the

"emergency aid exception" to the Fourth Amendment's warrant requirement. *See,*

*e.g.*, *Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1221 (9th Cir. 2014) ("[A]

warrantless search or seizure is permitted to render emergency aid or address

exigent circumstances."), *rev'd in part on other grounds*, 135 S. Ct. 1765 (2015).

4

Regardless of those two prior Orders, however, the SAC now alleges that HPD officers were actually opening the locked door when Plaintiff grabbed scissors and broke through the window, and the officers entered the apartment before or at the same time that he went on the ledge.  Doc. No. 11, SAC ¶ 10 (alleging that as Plaintiff turned off his radio "he saw the handle on his dead bold lock turn and his door was opened by the officer"); ¶ 12 ("By this time both officers had entered the Plaintiff's apartment completely."); ¶ 35 ("The officers had actually entered Plaintiff's apartment by the time the Plaintiff had reached his fear.").  That is, assuming the truth of the SAC's allegations, it would be premature to apply the emergency aid exception to the warrant requirement at this motion to dismiss stage.[3]

Plaintiff alleges that "the fact that at least six Honolulu Police Department Officers were present as well as an ambulance and fire truck were present before the Plaintiff fled shows premeditation on the [officers'] part to provoke an incident."  *Id.* ¶ 23.  He claims that officers "did willfully and

---

[3] To the extent the SAC contradicts earlier allegations regarding the timing of the entry of the two HPD officers, the court accepts the SAC's allegations.  *See Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("As a general rule, when a plaintiff files an amended complaint, '[t]he amended complaint supercedes the original, the latter being treated thereafter as non-existent.'") (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)); *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) ("[T]here is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations.").

wrongfully present themselves in an official capacity and with supposed legal

papers unlawfully unlock and enter the [Plaintiff's] private residence [without]

permission." *Id.* ¶ 26.  He claims that "[t]he entire incident did terrorize and

torment and cause emotional distress that did, in combination with [Plaintiff's]

pre-existing conditions, lead to his only psychotic episode where another

individual was injured and has led to the incarceration of the Plaintiff." *Id.* ¶ 28.[4]

**B.    Procedural Background**

Plaintiff, proceeding pro se, filed this action on March 25, 2015.

Doc. No. 1.  The Complaint was screened pursuant to 28 U.S.C. §§ 1915(e)(2) and

1915A, and dismissed without prejudice on April 10, 2015.  Doc. No. 5.  Plaintiff

filed the FAC on June 1, 2015, Doc. No. 8, and it was also dismissed without

prejudice on June 16, 2015.  Doc. No. 10.  Plaintiff filed the SAC on July 2, 2015.

Doc. No. 11.  Defendants filed their Motion to Dismiss the SAC on November 30,

2015.  Plaintiff filed his Opposition on December 21, 2015, and a corresponding

Reply was filed on January 11, 2016.  Doc. Nos. 26, 28.  The court decides the

Motion to Dismiss without an oral hearing under Local Rule 7.2(d).

The SAC names the "Honolulu Police Department" as the Defendant

---

[4] Plaintiff is currently incarcerated in a Hawaii prison on an unrelated charge.  His prisoner status is relevant towards an issue regarding tolling of the statute of limitations, analyzed later in this Order.

in its caption.  But the SAC also alleges that "[t]he Defendant is the Honolulu

Police Department and the unknown police officers involved in the warrantless

search and seizure of [Plaintiff's] apartment and person."  Doc. No. 11, SAC ¶ 2.

Plaintiff has also filed a Motion to Amend Second Amended Complaint, Doc. No.

25, seeking "to rectify any perceived or actual deficiency in regards to the stated

Defendant only."  *Id.* at 1.  To avoid confusion with the allegations of the SAC, he

"requests to amend the listed Defendant to reflect the parties who could be

potentially held liable according to the facts in the Complaint," and "not in any

way to alter the body of the Complaint."  *Id.* at 2.  That is, Plaintiff asks that the

operative Complaint "be amended to reflect the parties liable, two unknown HPD

Officers and City and County of Honolulu."  *Id*. at 3.

Plaintiff's original Complaint named "Honolulu Police Department,

Six Unknown Officers," in an "official capacity" as the Defendant.  Doc. No. 1,

Compl. at 1.  The FAC named only the "Honolulu Police Department" as the

Defendant, but alleged that the Defendant "is employed as . . . Police Officers (sic)

at Honolulu Police Department."  Doc. No. 8, FAC at 1.  Accordingly, given the

allegations of the SAC, and accepting the pro se Plaintiff's stated intent in his

Motion to Amend, the court construes the SAC as naming *both* the City *and* two

unknown HPD Officers in their official *and* individual capacities as Defendants.[5]

*See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants.") (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)).[6]

## III.  STANDARDS OF REVIEW

### A.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"  A Rule 12(b)(6) dismissal is proper when there is either a "'lack of a cognizable legal theory or the absence of sufficient facts alleged.'"  *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

Although a plaintiff need not identify the legal theories that are the basis of a pleading, *see Johnson v. City of Shelby, Mississippi*, 135 S. Ct. 346, 346 (2014) (per curiam), a plaintiff must nonetheless allege "sufficient factual matter,

---

[5] Defendants' Motion to Dismiss also appears to assume that the SAC is alleged against both the City and the individual HPD officers.  *See* Doc. No. 20-1, Mot. at 7.  The claims against the HPD officers in their *official* capacities are treated as claims against the City.  *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[6] So construed, the Motion to Amend, Doc. No. 25, is MOOT.

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061,

1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the

allegations contained in the complaint -- "is inapplicable to legal conclusions."

*Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

(citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216

(9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply

recite the elements of a cause of action, but must contain sufficient allegations of

underlying facts to give fair notice and to enable the opposing party to defend

itself effectively.").

      Rather, "[a] claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 556).  In other words, "the factual allegations that are taken

as true must plausibly suggest an entitlement to relief, such that it is not unfair to

require the opposing party to be subjected to the expense of discovery and

continued litigation."  *Starr*, 652 F.3d at 1216.  Factual allegations that only

permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

## B.   Pro Se Pleadings

Because Plaintiff is proceeding pro se, the court liberally construes his pleadings. *See Eldridge*, 832 F.2d at 1137. The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000). A court may, however, deny leave to amend where further amendment would be futile. *See, e.g.*, *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (reiterating that a district court may deny leave to amend for, among other reasons "repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment").

## IV.  <u>DISCUSSION</u>

## A.   Plaintiff Fails to State a § 1983 Claim Against the City

### 1.   *Section 1983 Standards*

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States

10

was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Although "Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipality can only be liable "for *its own*" constitutional violations. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985) (quoting *Monell*, 436 U.S. at 683).

That is, § 1983 does not impose liability on municipalities for constitutional violations committed by its employees under the theory of respondeat superior. Rather, "*Monell* teaches that [a municipality] may only be held accountable if the deprivation was the result of municipal 'custom or policy.'" *Id.* at 817. "[T]he constitutional violation must be caused by 'a policy, practice, or custom of the entity,' or be the result of an order by a policy-making officer." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (citations omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted). In other words,

> Local governing bodies *can* be held liable . . . where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or where the action is made "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Jackson v. Barnes*, 749 F.3d 755, 762-63 (9th Cir. 2014) (quoting *Monell*, 436 U.S. at 690-91). "An official municipal policy . . . 'includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.'" *Tsao*, 698 F.3d at 1144 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Moreover, "a local government body can be held liable under § 1983 for policies of inaction as well as policies of action." *Jackson*, 749 F.3d at 763 (citing *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1185-86 (9th Cir. 2002)). "[A] policy of inaction is based on a government body's 'failure to implement procedural safeguards to prevent constitutional violations.'" *Id.* (quoting *Tsao*, 698 F.3d at 1143). Under an "inaction" theory, a plaintiff must show that the policy amounts to "deliberate indifference to the plaintiff's constitutional right." *Id.* (quoting *Tsao*, 698 F.3d at 1143). "This requires showing that the defendant 'was on actual or constructive notice that its omission would likely result in a

constitutional violation." *Id.* (quoting *Tsao*, 698 F.3d at 1145).   Under this theory, a plaintiff must also show that "these policies were the moving force behind the employee's violation of [his] constitutional rights, in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Gibson*, 290 F.3d at 1194 (citation omitted).

### 2.    *Application of Standards*

Applying these § 1983 standards, Plaintiff's claim of municipal liability against HPD (as an official department of the City) fails.   He fails to identify, much less allege -- after having had three chances -- any applicable "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by HPD, the City, or any of its policy-making officers.  *Jackson*, 749 F.3d at 762.   He also fails to identify or allege any "persistent and widespread" custom or practice of HPD that could have caused the alleged unconstitutional search.   And he fails to identify or allege any specific policy of "inaction" that could have been the "moving force" behind the alleged unconstitutional behavior.

Plaintiff points to the SAC's allegation that HPD officers, an ambulance, and the fire department were already in place when he exited his apartment via his window.  Doc. No. 26, Pl.'s Opp'n at 8.   Given this allegation,

13

he contends that HPD must have a custom or policy that allows HPD officers to have sole discretion to call other officers and the fire department "on their own behest." *Id.* He also argues that HPD has a custom or policy that gives discretion to an HPD officer to make a warrantless entry if there are exigent circumstances. *Id.*

But -- assuming HPD has customs or policies (1) giving discretion to individual officers to call for help from other officers and from the fire department, and (2) allowing discretion to make a warrantless entry to a residence if there are exigent circumstances -- there is nothing wrong with giving such discretion to officers. And such customs or policies could not have *caused* the violation that Plaintiff alleges in the SAC (an unconstitutional search). That is, the alleged illegal search would not have been "*the result of*" such HPD policies. *Tuttle*, 471 U.S. at 817 (emphasis added). Plaintiff has not identified, much less alleged, any specific facts indicating that HPD has a widespread and persistent custom or policy of conducting searches *without* exigent circumstances, nor that HPD has a longstanding custom of failing to take action to prevent such illegal searches.[7] In short, he fails to state a claim for municipal liability under *Monell*.

--------

[7] Whether there actually *were* exigent circumstances here is not the question -- Plaintiff argues that the policy or custom of the City is allowing discretion to claim "exigent

(continued...)

The § 1983 claim against the City is DISMISSED.  Because Plaintiff has had three chances to state such a claim, it is clear that further amendment would be futile.  Thus, the claim against the City is dismissed with prejudice.

## B.   The Claim for Punitive Damages Fails

The SAC seeks "$500,000 in punitive damages for the willful [wrongfulness] and willful negligence of the [Defendants'] actions relating to the entire incident."  Doc. No. 11, SAC ¶ 29.  Even if the SAC otherwise states a claim, however, it is well-established that "a municipality is immune from punitive damages under 42 U.S.C. § 1983."  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *see also Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996) ("Although a municipality may be liable for compensatory damages in § 1983 actions, it is immune from punitive damages under the statute.").  And to the extent the SAC seeks punitive damages against the City under Hawaii law, such a claim is also barred.  *See Lauer v. Young Men's Christian Assoc.*, 57 Haw. 390, 402, 557 P.2d 1334, 1342 (1976) (holding that the City, as a municipal corporation, cannot be liable under common law for punitive damages).

---

[7](...continued)
circumstances as cause for [a] warrantless entry."  Doc. No. 26, Pl.'s Opp'n at 8.  He is arguing that his injury was caused by an HPD policy that allows officers to conduct warrantless entries if exigent circumstances exist.  And he has not argued that HPD has a custom of improperly claiming exigent circumstances when there were none.

Accordingly, a claim against the City for punitive damages is DISMISSED with prejudice.[8]

## C.      The Action is Time-Barred

Even if the SAC otherwise states a claim under § 1983 against either the City or individual HPD officers, Defendants argue that this action is time-barred under Hawaii Revised Statutes ("HRS") § 657-7.  The court agrees.

Congress did not provide a specific statute of limitations for a claim brought under § 1983.  Rather, "federal courts look to the law of the state in which the cause of action arose and apply the state law of limitations governing an analogous cause of action."  *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012) (citation omitted).  The applicable statute is a forum's statute of limitations for personal injury actions.  *See Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (holding that "§ 1983 claims are best characterized as personal injury actions"); *see also, e.g., Action Apartment Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d 1020,

---

[8] Further, to the extent the SAC asserts an independent claim for punitive damages, it is dismissed.  *See, e.g., Ross v. Stouffer Hotel Co.*, 76 Haw. 454, 466, 879 P.2d 1037, 1049 (1994) ("[A] claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action.").  And although it is possible to seek punitive damages as a remedy under § 1983 against government actors in their individual capacities, *Smith v. Wade*, 461 U.S. 30, 35-36 (1983), such relief as to the individual HPD officers fails because there is nothing alleged in the SAC that would be "malicious, wanton, or oppressive," *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005), or "with such malice as implies a spirit of mischief or criminal indifference to civil obligations."  *Masaki v. Gen. Motors Corp.*, 71 Haw. 1, 16-17, 780 P.2d 566, 575 (1989).  And, in any event (as established to follow), the § 1983 claim is time-barred.

1026 (9th Cir. 2007) ("It is well-established that claims brought under § 1983 borrow the forum state's statute of limitations for personal injury claims.").  Under Hawaii law, HRS § 657-7 is the applicable personal injury statute of limitations for a § 1983 claim.  *See Pele Def. Fund v. Paty*, 73 Haw. 578, 597-98, 837 P.2d 1247, 1260 (1992).  It provides that "[a]ctions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after[.]"  HRS § 657-7.

State law also governs "closely related questions of tolling."  *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (citations omitted).  "Federal courts . . . apply a forum state's law regarding tolling, including equitable tolling when not inconsistent with federal law."  *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999).  But determining when a cause of action *accrues* is a matter of federal law.  *See, e.g.*, *Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.").  In this context, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994) (quoting *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991)).

Here, Plaintiff has alleged in all three versions of his Complaint that

17

the incident occurred on January 27, 2013 -- two years and two months before he filed this action on March 25, 2015.  Doc. No. 1, Compl. at 5; Doc. No. 8, FAC at 5; Doc. No. 11, SAC at 2.  That is, his § 1983 claim for an unconstitutional search accrued on January 27, 2013, and Plaintiff did not file this suit until after the two-year limitations period in HRS § 657-7 had already expired.  *See, e.g.*, *Venegas v. Wagner*, 704 F.2d 1144, 1146 (9th Cir. 1983) ("[W]here false arrest or illegal search and seizure is alleged, the conduct and asserted injury are discrete and complete upon occurrence, and the cause of action can reasonably be deemed to have accrued when the wrongful act occurs."); *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015) (concluding that plaintiff's § 1983 claim accrued when police searched his home, when he was aware of a possible lack of timely search warrants).

Plaintiff responds by arguing that the statute of limitations "should be tolled as the Plaintiff has been an inmate during this time."  Doc. No. 26-1, Pl.'s Opp'n at 2.  He cites to HRS § 657-13, which provides:

> If any person entitled to bring any action specified in this part (excepting actions against the sheriff, chief of police, or other officers) is, *at the time the cause of action accrued*, either:
> (1) Within the age of eighteen years; or,
> (2) Insane; or
> (3) *Imprisoned on a criminal charge*, or in

18

> execution under the sentence of a criminal court
> for a term less than the person's natural life;
> such person shall be at liberty to bring such actions
> within the respective times limited in this part, after the
> disability is removed or at any time while the disability
> exists.

(Emphases added).[9]  But § 657-13 does not apply to toll the limitations period

under the facts of this case.  Although Plaintiff was imprisoned when he filed this

suit in 2015 (and remains imprisoned today), he was not imprisoned "at the time

[his] cause of action accrued."  Rather, his cause of action accrued earlier, on

January 27, 2013, when he admits he was not imprisoned for anything -- he was in

his residence listening to the radio.  Doc. No. 11, SAC ¶ 4.[10]  For that reason, the

tolling statute does not apply.[11]  *See Char v. Matson Terminals Inc.*, 817 F. Supp.

---

[9] *Kellberg v. Yuen*, 135 Haw. 236, 349 P.3d 343 (2015), re-states the plain language of the statute: "HRS  657-13 (1993) provides an exception to the two-year statute of limitations for plaintiffs who are, at the time the cause of action accrued, minors, insane, or imprisoned." *Id.* at 248 n.7, 349 P.3d at 355 n.7.

[10] The SAC also alleges that Plaintiff was "incarcerated due to an arrest on January 29, 2013, two days *after* this incident[.]"  Doc. No. 11, SAC ¶  38 (emphasis added).  And public records indicate that Plaintiff was indeed arrested on January 29, 2013 and charged on January 31, 2013 for a violation of HRS § 711-1106(1)(a) (harassment).  *See State v. Eager*, No. 1DCW-13-0000513 (Haw. Cir. Ct. Jan. 31, 2013) (docket available through "eCourt Kokua" at http://www.courts.state.hi.us/index.html) (last visited February 3, 2016).  This further confirms that he was not imprisoned when the cause of action accrued.

[11] Defendants also argue that § 657-13 does not apply because it excepts "actions against the sheriff, chief of police, or other officers."  Doc. No. 20-1, Mot. at 7.  Although the statute does exempt from tolling "§ 1983 claims against the Department of Public Safety and/or its officials," *Samonte v. Sandin*, 2007 WL 461311, at *4 n.10 (D. Haw. Feb. 7, 2007), this exception does not apply to actions, such as this one, against a county.  *See Dusenberry v. Cty. of*

(continued...)

850, 857 (D. Haw. 1992) (rejecting tolling under § 657-13, reasoning that "§ 657-13 only applies to toll the statute of limitation if the plaintiff is insane *at the time the cause of action accrued*" and where "it is undisputed that [plaintiff] was not mentally incompetent [when the claim accrued]"); *Imamoto v. Soc. Sec. Admin.*, 2008 WL 2774423, at *2 (D. Haw. July 16, 2008) ("Plaintiff has not established that he was legally insane at the time his cause of action accrued; whether Plaintiff was legally insane in 2003, 2004, or 2005 does not toll the statute of limitations [under § 657-13] for Plaintiff's claim that accrued in August 2000."); *cf. Gutierrez v. Butler*, 2008 WL 436948, at *2 (E.D. Cal. Feb. 14, 2008) ("A limitation period is not suspended by a disability or impediment to suit arising after the period commenced running.") (cited with approval in *Imamoto*).  *See also* HRS § 657-14 ("No person shall avail oneself of any disability enumerated in this part, unless the disability existed at the time the right of action accrued.").

Plaintiff also appears to argue that the statute of limitations should be equitably tolled because he was allowed only limited time to visit the prison law

---

[11](...continued)
*Kauai*, 2007 WL 3022243, at *4 (D. Haw. Oct. 12, 2007) ("[Although] the tolling provision does not apply to actions against 'the sheriff, chief of police, or other officers' . . . . [t]he statute does not exempt counties, leaving no doubt or uncertainty as to its limited reach."); *Coles v. Eagle*, 2014 WL 2214046, at *5 (D. Haw. May 27, 2014) (agreeing that "nothing in § 657-13 expressly exempts the counties").  But the *individual* claims against the officers are also excepted from tolling under § 657-13 as "actions against the sheriff, chief of police, *or other officers.*" (Emphasis added).

library, and because he "encountered difficulties with the [prison] business office where they caused unnecessary delays."  Mot. at 10.  In this regard, he proffers copies of inmate request forms regarding the location of an in forma pauperis application form, and a letter to the Clerk of Court regarding closure of the institutional law library (all dated *after* the statute of limitations had already expired on January 28, 2015).  *See* Doc. No. 26-6, Pl.'s Ex. D.[12]

To establish equitable tolling under Hawaii law, "a plaintiff must demonstrate '(1) that he . . . has been pursuing his right diligently, and (2) that some extraordinary circumstance stood in his way.'"  *Kobayashi v. Paderes*, 2014 WL 6775265, at *4 (D. Haw. Dec. 1, 2014) (quoting *Office of Hawaiian Affairs v. State*, 110 Haw. 338, 360, 133 P.3d 767, 789 (Haw. 2006)).  This rule is consistent with federal law.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.").

---

[12] In particular, a request form dated February 13, 2015 asks the prison business office about "what happened to my In [Forma] Pauperis filing form . . . It has been a couple of weeks or more."  Doc. No. 26-6, Pl.'s Ex. D at 1.  The business office responded on February 14, 2015 that it "has no record of your [IFP] Form."  *Id.*  Similarly, on March 11, 2015, Plaintiff requested the business office to complete his IFP application, saying that "[t]his is my second attempt to get this done through your office so please don't lose this."  *Id.*  The business officer responded on March 12, 2015 that "we can't lose anything we didn't receive."  *Id.*

Plaintiff fails to meet the standard for equitable tolling.  He has not

demonstrated that he had been "pursuing his rights diligently" -- at most there is

some indication that he might have had problems with obtaining information

regarding his prison trust account as necessary to proceed in forma pauperis.  *See*

28 U.S.C. § 1915(a)(1).  But all indications are that he attempted to obtain this

information after the limitations period already expired, or -- at best -- was about

to expire.  Nothing indicates he was prevented from filing before the limitations

period expired, nor anytime in the two years before he attempted to obtain his trust

account information.  *See Lyons v. Emerick*, 187 F. App'x 219, 221-22 (3d Cir.

2006) (per curiam) ("The fact that Lyons missed his deadline for filing suit while

he was waiting on prison officials to respond to his request for his account

statement does not justify the tolling of the statute of limitations in this case.

Despite the fact that Lyons had two years to file his complaint, he waited until the

last minute when his schedule was derailed by a delay for the paperwork necessary

to file his complaint *in forma pauperis*.  Lyons did not exercise reasonable

diligence in pursuing his claims and, thus, is not eligible for equitable tolling.")

(citing *Pace*, 544 U.S. at 419).  *See also Darby v. Dallas*, 2007 WL 2428582, at *4

(N.D. Tex. Aug. 24, 2007) ("Plaintiff's excuse that he could not file his § 1983

complaint timely because he was waiting for a notarized copy of his prison

22

account statement is not a 'rare and exceptional circumstance' sufficient to invoke equitable tolling."); *Torres v. Droun*, 2004 WL 721729, at *5 (D. Conn. Mar. 30, 2004) (rejecting claim of equitable tolling due to alleged delays by prison officials in providing plaintiff with a trust account statement).[13]

Moreover, Plaintiff's generalized contention that he has limited access to the law library is insufficient to establish exceptional circumstances. *See, e.g.*, *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (as amended) (holding that the lack of access to library material does not automatically qualify as grounds for equitable tolling); *cf. Rosati v. Kernan*, 417 F. Supp. 2d 1128, 1132 (C.D. Cal. 2006) ("[C]omplaints about limited access to the law library and legal

---

[13] Plaintiff's situation differs completely from *Miles v. Prunty*, 187 F.3d 1104 (9th Cir. 1999), which found equitable tolling of a one-year habeas corpus statute of limitation where petitioner relied on prison authorities to draw on his trust account to pay a filing fee and mail a habeas petition for filing, but delayed until doing so. *Id.* at 1107. In *Miles*, the petitioner demonstrated due diligence by preparing and submitting a petition within 17 days after learning that it needed to be filed. Here, on the other hand, there is no indication that Plaintiff diligently pursued his rights in the two year period before filing this action, nor that he missed the filing deadline because of a delay by prison authorities.

Indeed, because a filing fee is not jurisdictional, he could have instituted suit for limitations purposes while still waiting for an in forma pauperis application to be completed. *See, e.g.*, *Klemm v. Astrue*, 543 F.3d 1139, 1143-44 (9th Cir. 2008) (holding that a notice was timely filed even if it failed to comply with local rules and it lacked a required filing fee) (citing cases); *Robinson v. Doe*, 272 F.3d 921, 922 (7th Cir. 2001) (holding that a prisoner's § 1983 action was timely filed where complaint was received by district court clerk but returned because it lacked a filing fee or a motion to proceed in forma pauperis); *Casanova v. Dubois*, 304 F.3d 75, 80 (1st Cir. 2002) (holding that because "[t]he advance payment of a filing fee is generally not a jurisdictional prerequisite to a lawsuit," a prisoner complaint was timely filed when placed in prison mail system, even if not accompanied by IFP application or the filing fee).

materials at various state prisons and occasional prison lockdowns do not warrant

equitable tolling since petitioner has not shown any causal connection between

these events and his failure to timely file his habeas corpus petition.") (citing

cases).  And Plaintiff's pro se status and lack of legal knowledge is also an

insufficient basis for equitable tolling.  *See Rasberry v. Garcia*, 448 F.3d 1150,

1154 (9th Cir. 2006) ("[A] pro se petitioner's lack of legal sophistication is not, by

itself, an extraordinary circumstance warranting equitable tolling.").

In sum, Plaintiff's § 1983 claim was filed over two years after it

accrued, and there is no basis to toll the limitations period.  The action is time

barred.[14]

## D.    Any State Law Claims Are Dismissed Without Prejudice

In addition to alleging a violation of the Fourth Amendment, the SAC

appears to allege separate counts under state law for negligence and/or infliction

of emotional distress.  Doc. No. 11, SAC ¶¶ 27, 28.  These are supplemental state

law claims under 28 U.S.C. § 1367.

Having dismissed Plaintiff's § 1983 claims, there are no federal

claims remaining over which the court has original jurisdiction (and there is no

---

[14] Given these conclusions, the court need not address the individual HPD officers'
alternative argument that they are entitled to qualified immunity at this motion to dismiss stage of
the proceedings.

basis for diversity jurisdiction under 28 U.S.C. § 1332).  Under 28 U.S.C.

§ 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction . . .

if . . . the district court has dismissed all claims over which it has original

jurisdiction[.]"  "[W]hen deciding whether to exercise supplemental jurisdiction,

'a federal court should consider and weigh in each case, and at every stage of the

litigation, the values of judicial economy, convenience, fairness, and comity.'"

*City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  "[I]n the usual case

in which all federal-law claims are eliminated before trial, the balance of factors

will point toward declining to exercise jurisdiction over the remaining state-law

claims."  *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en

banc) (quoting *Carnegie-Mellon*, 484 U.S. at 350 n.7).

Judicial economy, convenience, fairness, and comity weigh in favor

of declining jurisdiction over Plaintiff's state law claims.  The court thus dismisses

any state law claims without prejudice to refiling in a state court.  (The court offers

no opinion on whether state law claims might also be barred by the applicable

statute of limitations under Hawaii law.)

///

///

25

# V.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss Second Amended Complaint, Doc. No. 21, is GRANTED.  Because further amendment would be futile, the federal claims are dismissed with prejudice.  Any supplemental state law claims are dismissed without prejudice.  The Clerk of Court shall issue judgment in favor of Defendants, and close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 4, 2016.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Eager v. Honolulu Police Dep't, et al.*, Civ. No. 15-00098 JMS-KSC, Order Granting Defendants' Motion to Dismiss Second Amended Complaint, Doc. No. 21